IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILBUR RAY HARRISON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-4682-D |
| VS. | § | |
| | § | |
| WELLS FARGO BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from a bank's actions in honoring letters of credit, both parties move for summary judgment, and plaintiff moves for leave to file an amended complaint. For the reasons explained, the court denies the summary judgment motions and grants plaintiff leave to file an amended complaint.

I

This is an action by plaintiff Wilbur Ray Harrison ("Harrison") against defendant Wells Fargo Bank, N.A. ("Wells Fargo"), alleging claims for breach of contract, fraud by omission, and conversion. Harrison was the president and sole shareholder of The Millennium Protection Group, Inc. ("Millennium"), which provided tire protection plans to consumers through auto dealerships.[1] Consumers protected by the plans could request tire

---

[1]Because both parties move for summary judgment, the court will recount the evidence that is undisputed, and, when necessary to set out evidence that is contested, will do so favorably to the party who is the summary judgment nonmovant in the context of that evidence. *See, e.g., GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (citing *AMX Corp. v. Pilote Films*, 2007 WL 1695120,

repairs or replacements from dealerships or auto repair centers.  The dealerships or repair centers would, in turn, submit the consumers' claims to Millennium for approval.  Once Millennium approved a claim, it would authorize the dealership or repair center to perform the work or replacement covered by the claim, and reimburse the dealership or repair center after the covered work had been performed.

To insure that Millennium paid dealerships and repair centers for work performed, it purchased bonds from Lexon Insurance Company ("Lexon") and/or Bond Safeguard Insurance Company ("Bond Safeguard") (sometimes referred to, collectively, as "Lexon/Bond Safeguard") and Acstar Insurance Company ("Acstar").  Payment on the bonds was to be made only if Millennium failed to pay the dealerships or repair centers for work performed on claims that Millennium had authorized and approved.  If Millennium failed to pay an authorized claim, the dealer or repair center had the right to contact Lexon/Bond Safeguard or Acstar to seek the amount to which it was entitled for that claim. Millennium was obligated to reimburse Lexon/ Bond Safeguard and Acstar for payments they made to dealerships or repair centers that had performed work on claims that Millennium had approved but had not paid.

The bonds that Millennium purchased were collateralized by ten letters of credit issued by Wachovia Bank, N.A. ("Wachovia")—whom Wells Fargo later purchased[2]—for

---

at *1 n.2 (N.D. Tex. June 5, 2007) ( Fitzwater, J.)).

[2]For clarity, the court will refer only to Wachovia when discussing the underlying facts of this case, but it will refer to "Wells Fargo" as the party-defendant.

the benefit of Lexon/Bond Safeguard and Acstar.  The letters of credit were secured by Millennium's certificates of deposit held at Wachovia.  For each letter of credit, Harrison, as president of Millennium, executed a Continuing Letter of Credit Agreement ("Letter of Credit Agreement") that authorized Wachovia to "honor any presentation or drawing under the [letters of credit] that appears on its face substantially to comply with the terms and conditions of the [letters of credit]."  D. 11/24/14 App. 82.  According to Wells Fargo, each letter of credit required the beneficiary to present its claim to Wachovia with a written certification stating that the beneficiary was entitled to the requested draw, and, upon such presentment, Wachovia was obligated under the letters of credit to disburse the requested amount to the beneficiary, up to the aggregate amount of the letter of credit.

In addition to the Letter of Credit Agreement, Harrison, on behalf of Millennium, executed a Security Agreement ("Security Agreement") for each of the ten letters of credit. The Security Agreement allowed Wachovia to offset the certificates of deposit after disbursing funds on the letters of credit, and it provide that Millennium "shall not assign its rights and interest [under the Security Agreement] without the prior written consent of [Wachovia], and any attempt by [Millennium] to assign without [Wachovia's] prior written consent is null and void."  *Id.* at 93.

On April 1, 2009 Millennium filed for bankruptcy.  Shortly thereafter, the beneficiaries under seven of the ten letters of credit made formal calls on the letters of credit. According to Wells Fargo, each call complied with the terms of the letters of credit.

- 3 -

Wachovia thus honored the calls and disbursed funds on the seven letters of credit.[3]  Wells Fargo contends that Wachovia then liquidated Millennium's certificates of deposit and one deposit account in the total amount of $190,261.22.[4]  Harrison posits that Wachovia held $342,577.06 of Millennium funds in certificates of deposit, that the payout based on presentations made by Lexon/Bond Safeguard and Acstar under the letters of credit was $176,250, and that the remaining balance of $166,327.06 remains unaccounted for.

On August 10, 2011 Millennium's chapter 7 trustee abandoned all claims of the estate, and on October 2, 2012 the bankruptcy was closed.  On November 30, 2012 Harrison filed a motion to reopen Millennium's bankruptcy so that he could seek to recover the funds that Wachovia had distributed to the beneficiaries under the letters of credit.  On January 10, 2013 the bankruptcy court denied Harrison's motion to reopen the bankruptcy, holding that the claims belonged to Millennium, not Harrison.

On October 28, 2013 Harrison filed this suit against Wells Fargo in state court, asserting claims for breach of contract, fraud by omission, and conversion.  Wells Fargo

---

[3]The parties disagree on what amount was disbursed.  Harrison contends that Wachovia released Millennium funds to Lexon in the amount of $175,000 and to Acstar in the amount of $40,000, but he also maintains that the payout based upon presentations made by Lexon/Bond Safeguard and Acstar under the Letters of Credit was in the total sum of $176,250.  Wells Fargo contends the total amount disbursed on the seven letters of credit was $190,850.

[4]Wachovia did not seek bankruptcy court approval before reimbursing itself with Millennium's funds, which Harrison contends constituted property of the Millennium bankruptcy estate.

removed the case to this court,[5] and moved to dismiss based on Harrison's lack of standing. Harrison then amended his complaint and attached what purported to be an assignment of claims from Millennium to Harrison. In a status report, Wells Fargo stated that, based on the amended complaint, it appeared that its motion to dismiss was moot. Accordingly, the court denied Wells Fargo's motion to dismiss.

Wells Fargo and Harrison have filed cross-motions for summary judgment, and Harrison seeks leave to amend his complaint to add a claim for wilful violation of the automatic stay in Millennium's bankruptcy. The motions are now ripe for decision.

II

Wells Fargo moves for summary judgment dismissing each of Harrison's claims on the ground that they are time-barred.

A

"Under Texas law, limitations is an affirmative defense on which the [summary judgment] movant bears the burden of proof." *Elmo v. Oak Farms Dairy*, 2008 WL 2200265, at *1 (N.D. Tex. May 14, 2008) (Fitzwater, C.J.) (citing *Morriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 867 (Tex. App. 1997, no writ)). To be entitled to summary

---

[5]Wells Fargo removed the case on the basis of diversity jurisdiction under 28 U.S.C. § 1332. The notice of removal fails to properly plead the parties' citizenship. This a defect that the court typically notes shortly after a case is removed. Here, however, the case was initially assigned to another judge, and later transferred to the undersigned's docket, so the defect is only now being noted. Although the notice of removal fails to properly plead the parties' citizenship, the court is satisfied that the parties are completely diverse citizens and that it has subject matter jurisdiction.

judgment on a defense on which the party moving for summary judgment will have the burden of proof at trial, the party "must establish 'beyond peradventure all of the essential elements of the . . . defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).  This means that the moving party must demonstrate that there are no genuine and material fact disputes and that it is entitled to summary judgment as a matter of law.  *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

B

Chapter 5 of the Texas Business and Commerce Code, which applies to "letters of credit and to certain rights and obligations arising out of transactions involving letters of credit," Tex. Bus. & Com. Code Ann. § 5.103(a) (West 2011), contains the following statute of limitations: "An action to enforce a right or obligation arising under this chapter must be commenced within one year after the expiration date of the relevant letter of credit or one year after the cause of action accrues, whichever occurs later." *Id.* § 5.115.  Wells Fargo maintains that Harrison's claims for breach of contract, fraud by omission, and conversion all arise from allegations that Wachovia wrongfully distributed funds to beneficiaries under multiple letters of credit, and, accordingly, are governed by the one-year statute of limitations

prescribed by § 5.115.  Wells Fargo contends that it is entitled to summary judgment dismissing these claims as time-barred because, even assuming that Millennium's bankruptcy tolled the statute of limitations, Harrison did not file suit until more than one year after the bankruptcy closed on October 2, 2012.

Harrison responds, *inter alia*, that the statute of limitations in § 5.115 does not apply to the claims he asserts in this lawsuit because he is not suing for a violation of the statute.[6]

C

The one-year statute of limitations in § 5.115 applies only to "[a]n action to enforce a right or obligation arising under [Chapter 5 of the Business and Commerce Code]."  Tex. Bus. & Com. Code Ann. § 5.115.  Accordingly, for the one-year statute of limitations to apply to one of Harrison's claims, the claim must seek to enforce a right or obligation that arises under Chapter 5.

Under Texas law, to make this determination the court "examine[s] the basic substance of the pleadings rather than the mere form of the cause of action."  *Shannon v. Law-Yone*, 950 S.W.2d 429, 434 (Tex. App. 1997, pet. denied) (citing *Gallagher v. Bintliff*, 740 S.W.2d 118, 119 (Tex. App. 1987, writ denied)); *see also Murphy v. Gruber*, 241 S.W.3d 689, 697 (Tex. App. 2007, pet. denied) ("[T]o determine what statute of limitations

---

[6]Harrison also contends that, even if the one-year statute of limitations in § 5.115 does apply, his suit is timely because he could not file it until the bankruptcy court issued its order denying his amended motion to reopen the bankruptcy case on January 10, 2013, and he filed suit in state court on October 28, 2013, well within one year of that date.  The court need not reach this contention.

- 7 -

applies to the claims, we must discern the real substance of the claims").

> A court must look to the substance of the plaintiff's pleadings to characterize the nature of his grievance, not its nomenclature. This characterization is formed by determining the makeup of the remedy sought and by assessing which action, with due regard to the defendant's rights, that would most amply redress the plaintiff.

*Ho v. Univ. of Tex. at Arlington*, 984 S.W.2d 672, 686 (Tex. App. 1998, pet. denied) (citing

*Galveston, H. & S.A. Ry. Co. v. Roemer*, 20 S.W. 843, 844 (Tex. Civ. App. 1892, no writ)).

"[A] party cannot recast her claim in the language of another cause of action to avoid

limitations." *McCoy v. Dall. Area Rapid Transit*, 2011 WL 5864038, at *2 (Tex. App. 2011,

no pet.) (mem. op.) (citing *Earle v. Ratliff*, 998 S.W.2d 882, 893 (Tex. 1999)).

Regardless whether Harrison *could have* asserted a claim to enforce a right or

obligation arising under Chapter 5, the substance of his claims is to enforce rights arising

under Texas common law.  For example, Tex. Bus. & Com. Code § 5.111(b) provides that,

"[i]f an issuer . . . honors a draft or demand in breach of its obligation to the applicant, the

applicant may recover damages resulting from the breach."  But Harrison does not allege that

when Wachovia released Millennium's funds to Lexon, it violated § 5.111(b).  Instead, he

asserts that Wachovia "wrongfully releas[ed] [Millennium's] funds to Lexon in violation of

. . . the Parties' contracts."  Am. Compl. 5.  Under Texas law, the elements of a claim for

breach of contract are "(1) the existence of a valid contract, (2) plaintiff's performance of

duties under the contract, (3) defendants' breach of the contract, and (4) damages to plaintiff

resulting from the breach."  *Orthoflex, Inc. v. ThermoTek, Inc*., 983 F.Supp.2d 866, 872

(N.D. Tex. 2013) (Fitzwater, C.J.) (citation and internal quotation marks omitted).  Harrison alleges that he and Wachovia entered into a contract under which he agreed to deposit funds in various accounts and certificates of deposit to be held by Wachovia, that Wachovia breached this agreement by wrongfully releasing these funds to Lexon, in violation of the parties' contracts, and that he was damaged as a result.  That Harrison *could have* asserted a claim to enforce a right or obligation arising under Chapter 5 does not convert his contract claim into one arising under Chapter 5.  The same reasoning applies to Harrison's claims for fraud by omission and conversion. Wells Fargo has therefore failed to establish beyond peradventure that Harrison's common law claims are governed by the one-year statute of limitations in § 5.115.  *See, e.g., Rodessa Operating Co. v. Leverich Liquidation Co.*, 2014 WL 172504, at *1 (Tex. App. Jan. 16, 2014, pet. denied) (mem. op.) (refusing to characterize misrepresentation claim as one for negligent misrepresentation where, "based upon the language used by [plaintiff] in its pleading," the claim was most properly characterized as one for fraudulent inducement, and was therefore governed by four-year statute of limitations); *Lang v. City of Nacogdoches*, 942 S.W.2d 752, 759 (Tex. App. 1997, writ denied) (rejecting argument that claim for "intentional infliction of emotional distress was merely another form of malicious prosecution in disguise and should be barred by the one-year statute of limitations" applicable to malicious prosecution claims because Texas Supreme Court had recognized tort of intentional infliction of emotional distress, "more than one cause of action may be asserted out of the same factual allegations," and plaintiffs' "cause of action for intentional infliction of emotional distress is a separate cause of action

- 9 -

which is not time barred by the one-year statute of limitations applicable to malicious prosecution claims.").

Because Wells Fargo has failed to establish beyond peradventure that Harrison's claims are barred by the one-year statute of limitations in § 5.115, the court denies its motion for summary judgment on this basis.

### III

The court now turns to Harrison's motion for summary judgment, and considers first the part of the motion addressed to his breach of contract claim.

### A

Harrison maintains that Wells Fargo is liable for breach of contract because, when Wachovia issued payment under the letters of credit and reimbursed itself using Millennium's collateral (the certificates of deposit), it violated the automatic stay in Millennium's bankruptcy[7] and the terms of its agreements with Millennium.  Harrison also

---

[7]In deciding Harrison's motion for summary judgment on his breach of contract claim, the court has not considered his allegations and evidence concerning Wachovia's alleged breach of the automatic stay in Millennium's bankruptcy.  Although the court is today granting Harrison leave to amend his complaint to add a claim for willful violation of the automatic stay, he has not yet pleaded such a claim.  "'As a general rule, new claims cannot be raised in motions for summary judgment.'" *Sun River Energy, Inc. v. McMillan*, 2014 WL 4771852, at *10 (N.D. Tex. Sept. 25, 2014) (Fitzwater, C.J.) (quoting *Buchanan v. McCool*, 2006 WL 3044446, at *12 (E.D. Tex. Oct. 25, 2006)); *see also Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990))).

contends that Wells Fargo breached the Letter of Credit Agreement by issuing payment under letters of credit that had been canceled, and by issuing two payments under the same letter of credit for an amount in excess of the letter of credit.

Wells Fargo responds that Harrison cannot prevail on his breach of contract claim because he is attempting to recover under the Letter of Credit Agreement and Security Agreement, which were executed between Millennium and Wachovia. Wells Fargo posits that Harrison is asserting an interest in these agreements via an assignment from Millennium that is null and void because Millennium did not obtain Wells Fargo's prior written consent to the assignment, as the agreements required. Wells Fargo also contends that the evidence establishes that Wachovia did not breach the contracts. It posits that the contracts allowed—they in fact obligated—Wachovia to pay letter of credit beneficiaries when presented with a proper call on the letters of credit, and that the evidence shows that seven calls on the ten letters of credit complied with the terms of those letters of credit. Wells Fargo contends that, at the time of the calls, Wachovia had a contractual and legal duty to pay the beneficiaries, and, once Wachovia made the distributions, it had the right under the express terms of the Letter of Credit Agreement and Security Agreement to offset the certificates of deposit. Regarding Harrison's allegation that Wachovia issued payment on canceled letters of credit or made multiple payments on the same letter of credit, Wells Fargo contends that the summary judgment evidence establishes that Wachovia issued payments totaling $190,850 on seven different letters of credit; that the collateral securing those seven letters of credit was liquidated in the total amount of $190,261.22; that three letters of credit

were canceled in the amount of $120,000, and that one letter of credit was drafted but never issued.  Finally, Wells Fargo maintains that, to the extent the beneficiaries should not have been paid on the letters of credit, Harrison's cause of action lies against those beneficiaries, not Wells Fargo.

Harrison replies that, because Millennium no longer has the capacity to sue Wells Fargo in this state,[8] he has standing, as a shareholder in the corporation, to sue to recover the wrongfully distributed assets of Millennium.  He clarifies that his breach of contract claim is not based on the allegation "that Wells Fargo is liable for paying out on then-existing Letters of Credit for improper or fraudulent presentments made by the beneficiaries," P. 12/4/14 Reply 9, but is instead based only on the allegation that Wachovia made wrongful payments on canceled letters of credit, and paid twice on one letter of credit.

B

The court holds that Harrison has failed to establish beyond peradventure that he is entitled to recover on his breach of contract claim.  As the court has set out above,  under Texas law, the elements of a claim for breach of contract are "(1) the existence of a valid contract, (2) plaintiff's performance of duties under the contract, (3) defendants' breach of the contract, and (4) damages to plaintiff resulting from the breach."  *Orthoflex*, 983 F.Supp.2d at 872.  Setting aside the question whether Harrison can sue for breach of the

_____

[8]According to Harrison, Millennium was incorporated on June 24, 2004, but its existence as an entity with the Texas Secretary of State and good standing status with the Office of the Comptroller for the State of Texas were lost on August 16, 2013.

Letter of Credit Agreement or Security Agreement in the capacity of a shareholder, given that both contracts contain language prohibiting the assignment of rights without Wachovia's prior approval[9]—which a reasonable trier of fact could find was not obtained—Harrison has failed to establish beyond peradventure that Wachovia breached the contracts.

Moreover, Harrison fails to cite to any provision of the Letter of Credit Agreement or Security Agreement that he contends Wachovia breached.  In his reply, he clarifies that he does not base his claims against Wells Fargo on Wachovia's paying out then-existing letters of credit for improper or fraudulent presentments, but, instead, "Plaintiff's allegations against Wells Fargo are that the bank made wrongful payments on (1) cancelled Letters of Credit, and (2) on a Letter of Credit twice."  P. 12/4/14 Reply 9.  In support of his contention that Wachovia made payment on canceled letters of credit, Harrison cites an unidentified document that lists letters of credit numbers SM230866, SM229176, SM228998, and SM232002, among others, as "not drawn – cancelled."  P. 11/3/14 App. 8.  He then cites evidence that Wachovia paid SM230866 to Lexon/Bond Safeguard in the amount of $11,250.  *Id*. at 14.  But Wells Fargo has introduced evidence that the only three letters of credit that were canceled were SM229176, SM228998, and SM227899; that SM230866 was *not* canceled but was instead paid to Lexon/Bond Safeguard; and that no amounts were paid on the three

---

[9]The Letter of Credit Agreement provides: "Applicant shall not assign any rights or remedies related to the Agreement or the Credit without written consent of the Bank."  D. 11/24/14 App. 85.  The Security Agreement provides, "Debtor shall not assign its rights and interest hereunder without the prior written consent of Bank, and any attempt by Debtor to assign without Bank's prior written consent is null and void."  *Id.* at 93.

canceled letters of credit.[10]  The court concludes that there is a genuine issue of material fact

whether Wachovia made payment on canceled letters of credit.  Harrison's evidence is

insufficient to establish beyond peradventure that the letters of credit listed as "not drawn –

cancelled" on the unidentified document included in Harrison's appendix were actually

canceled and then paid, especially in light of Wells Fargo's evidence to the contrary.

---

[10]In opposition to Harrison's summary judgment motion, Wells Fargo relies on the affidavit of Nora Ingram ("Ingram"), who is currently employed as Lending Manager for Wells Fargo, and on various documents that Ingram avers were kept by Wells Fargo in the regular course of business.  Harrison objects to Ingram's affidavit on the grounds that it is incomplete; it fails to describe with particularity how Ingram has personal knowledge of information and events that occurred before Wells Fargo became Wachovia's successor-in-interest; it fails to describe how the documents were kept in the ordinary course of business at Wachovia, the method and manner in which the documents were kept, and whether it was in the ordinary course of business for Wachovia employees to make records of the various transactions; and the evidence attached to Harrison's motion for summary judgment directly refutes the statements made in Ingram's affidavit.  The court overrules Harrison's objections.

Ingram's competence to testify is established if the record as a whole shows that her testimony meets the requirements of Rule 56.  *See Lodge Hall Music, Inc. v. Waco Wrangler Club, Inc.*, 831 F.2d 77, 80 (5th Cir. 1987); *Brueggemeyer v. Am. Broad. Cos.*, 684 F. Supp. 452, 463 (N.D. Tex. 1988) (Fitzwater, J.).  Ingram has provided a basis in her affidavit to show that she has sufficient personal knowledge to offer the testimony and to sponsor the documents in question.  She avers that she is the custodian of records with respect to the letters of credit issued on Millennium's behalf and the certificate of deposit accounts securing the letters of credit, and that the attached exhibits are records kept by Wells Fargo in the regular course of business.  Harrison's evidence that he contends "directly refutes" Ingram's affidavit and attached evidence does not affect its admissibility, but merely creates a fact issue to be resolved at trial.  And even if there are some defects in Ingram's evidence, "the papers of a party opposing summary judgment are usually held to a less exacting standard than those of the moving party."  *Lodge Hall Music*, 831 F.2d at 80.

Wells Fargo inadvertently neglected to include page 3 of Ingram's affidavit in the appendix to its response to Harrison's motion for summary judgment.  On December 10, 2014 Wells Fargo filed a motion for leave to file an amended appendix that contains the missing page.  Because the court is not relying on the contents of page 3 in today's decision, it denies as moot Wells Fargo's motion for leave to file an amended appendix.

Accordingly, the court concludes that Harrison has not established beyond peradventure the elements of his breach of contract claim based on Wells Fargo's allegedly making payment on canceled letters of credit.

Nor has Harrison established beyond peradventure that Wachovia breached the Letter of Credit Agreement or Security Agreement by paying out letters of credit SM232724 (in the amount of $37,500) and SM230927 (in the amount of $62,500), when the presentment for both represented it was for bond number 1025518.  Harrison contends that bond number 1025518 was for $250,000, and that Millennium was required to obtain a letter of credit for 25% of the face value of the bond.  It thus posits that Wachovia wrongfully paid out the additional $37,500 on the $62,500 letter of credit.  But Harrison has failed to cite any evidence that Millennium was only required to (and did) obtain a letter of credit for $62,500 in relation to bond number 1025518. He has also failed to cite to any provision of either the Letter of Credit Agreement or the Security Agreement that Wachovia allegedly breached by making payment on these two letters of credit.  Accordingly, Harrison has failed to establish beyond peradventure his breach of contract claim based on Wachovia's paying letters of credit SM232724 and SM230927.

Because Harrison has failed to establish the essential elements of breach beyond peradventure, the court denies his motion for summary judgment on his breach of contract claim.

- 15 -

IV

Harrison moves for summary judgment on his claim for fraud by omission. Under Texas law, to recover on this claim, Harrison must establish beyond peradventure:

> (1) the defendant failed to disclose material facts to the plaintiff that the defendant had a duty to disclose; (2) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (3) the defendant was deliberately silent when [it] had a duty to speak; (4) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (5) the plaintiff relied on the defendant's nondisclosure; and (6) the plaintiff was injured as a result of acting without that knowledge.

*Frankoff v. Norman*, 448 S.W.3d 75, 84 (Tex. App. 2014, no pet.) (citing *Horizon Shipbuilding, Inc. v. Blyn II Holding, LLC*, 324 S.W.3d 840, 850 (Tex. App. 2010, no pet.)).

Harrison contends that, during Millennium's bankruptcy, Wachovia filed a November 13, 2009 motion requesting that the automatic stay be lifted to allow Wachovia to reimburse itself for two letters of credit that it had paid, but that more than two letters of credit had already been paid by that date. Harrison also maintains that Wachovia failed to disclose to Millennium or its bankruptcy trustee that Wachovia was "converting Millennium funds (wrongfully) following its payments to Lexon/Bond Safeguard and Acstar." P. 11/3/14 Br. 9. He posits that

> Wachovia knew that Millennium was unaware that Wachovia was converting Millennium's collateral following payment of $175,000 to Lexon/Bond Safeguard and $40,000 to Acstar and/or knew that Millennium did not have an equal opportunity to discover such information. By failing to disclose this information, Millennium lost the $175,000 that was wrongfully

> paid to Lexon/Bond Safeguard and $40,000 that was wrongfully
> paid to Acstar when Wachovia converted Plaintiff's collateral in
> the same amounts.  Wachovia's above-stated omissions were in
> reckless disregard to the rights and welfare of Plaintiff, which
> demands the imposition of punitive damages.

*Id.* at 9-10.

Harrison is not entitled to summary judgment on this claim.  At a minimum, Harrison has not introduced any evidence (or argued) that he or Millennium relied on Wachovia's alleged nondisclosure of the fact that it was "converting" Millennium's collateral or that he suffered injury as a result of such reliance (as opposed to suffered injury as a result of the alleged conversion itself).  Accordingly, because Harrison has failed to establish his claim for fraud by omission beyond peradventure, the court denies his motion for summary judgment in this respect.

## V

Harrison also moves for summary judgment on his claim for conversion.

## A

Under Texas law, to recover for conversion, Harrison must prove: (1) he owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with his rights; (3) he made a demand for the property; and (4) defendant refused to return the property.  *Ojeda v. Wal-Mart Stores, Inc.*, 956 S.W.2d 704, 707 (Tex. App. 1997, pet. denied) (citations omitted).  To obtain summary judgment on this claim, Harrison must establish these elements beyond peradventure.

Harrison contends that Wachovia had $342,577.06 of Millennium funds in certificates of deposit, there was a payout of $176,250 based on presentations made by Lexon/Bond Safeguard and Acstar under the letters of credit, and the remaining balance of $166,327.06 is unaccounted for. Harrison posits that the sum of $166,327.06 is still due and owing, and that Wells Fargo refuses to return these funds to him. Harrison also relies on the same evidence that he relied on in support of his breach of contract claim—i.e., evidence that Wachovia issued payment on canceled letters of credit and that Wachovia issued payment on two different letters of credit for the same bond number—to argue that Wachovia's payment of these funds constitutes conversion under Texas law.

Wells Fargo responds that its disbursements to beneficiaries on the letters of credit and subsequent offsets of the certificates of deposit were not wrongful and were expressly prescribed by the Letter of Credit Agreement and Security Agreement. It maintains that, despite Harrison's contrary representations, all funds were properly disbursed and accounted for, and Wells Fargo holds no property that it is not entitled to hold.

B

Harrison has failed to establish beyond peradventure that he is entitled to summary judgment on his conversion claim. Regarding Harrison's contention that Wells Fargo converted Millennium's funds by issuing payment on canceled letters of credit and issuing payment on two different letters of credit for the same bond number, the court has already concluded that Harrison has not established beyond peradventure that Wachovia's conduct with respect to these letters of credit was wrongful. *See supra* § III(B). As for the sum of

- 18 -

$166,327.06 that Harrison contends remains unaccounted for, Harrison relies on two unidentified documents, allegedly provided by Wells Fargo, to contend that Wachovia had $342,577.06 of Millennium funds in certificates of deposit and paid $176,250 based on presentations made by Lexon/Bond Safeguard and Acstar under the letters of credit.  He provides no evidence, however, to support the contention that he is entitled to the remaining $166,327.06, that he made a demand for this amount, or that Wachovia or Wells Fargo refused to return the amount.  Wells Fargo, on the other hand, has presented evidence that it disbursed $190,850 in funds from the letters of credit, that it liquidated certificates of deposit in the amount of $190,261.22, and that the three remaining letters of credit were canceled and Wells Fargo released its security interest in the certificates of deposit securing the three letters of credit.  Because there are genuine fact issues regarding Millennium's funds that were held in certificates of deposit that were not paid out to Lexon/Bond Safeguard or Acstar, and because Harrison has failed to adduce any evidence in support of certain elements of his conversion claim, the court concludes that he has failed to meet his summary judgment burden.  Accordingly, the court denies Harrison's motion for summary judgment on his conversion claim.

VI

The court now considers Harrison's motion for leave to file an amended complaint.

A

When, as here, the deadline for seeking leave to amend pleadings has expired,[11] a court considering a motion to amend must first determine whether to modify the scheduling order under the Rule 16(b)(4) good cause standard. *See S & W Enters., L.L.C. v. SouthTrust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).  To meet the good cause standard, the party seeking to modify the scheduling order must show that, despite his diligence, he could not reasonably have met the scheduling order deadline. *See S & W Enters.*, 315 F.3d at 535.  If the movant satisfies the requirements of Rule 16(b)(4), the court must next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Am. Tourmaline Fields*, 1998 WL 874825, at *1.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing

---

[11]The April 9, 2014 scheduling order required that motions for leave to amend the pleadings be filed no later than July 1, 2014.  Harrison filed his motion for leave to amend his complaint on December 12, 2014.

the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (citation, internal quotation marks, and brackets omitted). "The 'good cause' standard focuses on the diligence of the party seeking a modification of the scheduling order." *Forge v. City of Dallas*, 2004 WL 1243151, at *2 (N.D. Tex. June 4, 2004) (Kaplan, J.).

B

Harrison neither identifies the correct standard nor cites Rule 16(b)(4) in his brief, but the grounds on which he relies enable the court to apply the pertinent four-factor test. "When a party files an untimely motion . . . and does not address the good cause standard under Rule 16(b)(4), this court typically denies the motion for that reason alone." *Wachovia Bank, Nat'l Ass'n v. Schlegel*, 2010 WL 2671316, at *3 (N.D. Tex. June 30, 2010) (Fitzwater, C.J.) (citing *EEOC v. Serv. Temps, Inc.*, 2009 WL 3294863, at *1 (N.D. Tex. Oct. 13, 2009) (Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012)) (addressing motions for leave to amend). But the court has made exceptions in cases where the movant does not address the Rule 16(b)(4) good cause standard but the grounds on which he relies to establish good cause are relatively clear. *See, e.g., Nieves v. John Bean Techs. Corp.*, 2014 WL 2587577, at *2 (N.D. Tex. June 10, 2014) (Fitzwater, C.J.) ("Nieves neither identifies the correct standard nor cites Rule 16(b)(4) in her brief, but the grounds on which she relies enable the court to apply the pertinent four-factor test."); *Cartier v. Egana of Switz. (Am.) Corp.*, 2009 WL 614820, at *2 (N.D. Tex. Mar. 11, 2009) (Fitzwater, C.J.) ("Cartier does not brief its motion under the Rule 16(b)(4) good cause standard or related case law, but the grounds on which

it relies to establish good cause are relatively clear."). Accordingly, because the grounds on which Harrison relies enable the court to apply the pertinent four-factor test, the court will consider on the present briefing whether he has met the good cause standard of Rule 16(b)(4) to amend the scheduling order.

C

1

The court first considers Harrison's explanation. Harrison contends that he is seeking to amend his complaint to clearly define his causes of action against Wells Fargo and to clarify his position. He requests leave to amend so that he can add a claim that Wells Fargo is liable for a willful violation of the automatic stay in Millennium's bankruptcy. Harrison contends that his original petition contains allegations pertaining to Wachovia's alleged violation of the automatic stay, and that it was not until Wells Fargo "t[ook] issue with an alleged failure to include a cause of action for violation of the automatic stay" in its response to his motion for summary judgment that he was on notice that he needed to amend. P. 12/12/14 Br. 3. Harrison maintains that he did not delay in seeking leave to amend once he received Wachovia's November 24, 2014 summary judgment response.

The record reflects that Harrison did not seek leave to amend until Wells Fargo contended in its November 24, 2014 summary judgment response that Harrison had not pleaded this claim. And after Wells Fargo took that position, Harrison's promptly moved for leave to amend.

2

The second factor is the importance of the requested relief.  Because Harrison has not briefed his motion under the Rule 16(b)(4) good cause standard, he has not attempted to show that the relief is important.  Nevertheless, it is apparent that the relief is important, as reflected in the summary judgment briefing and in the fact that it would add a materially different type of claim.

3

The third factor considers potential prejudice in allowing the amendment.  Harrison contends that because his original petition contains allegations pertaining to the violation of the automatic stay, Wells Fargo has been aware since the onset of this litigation that he maintains that Wachovia violated the automatic stay.  Harrison posits that permitting him to amend to include this claim will not cause delay, surprise Wells Fargo, or in any way prejudice Wells Fargo.  According to the certificate of conference, Wells Fargo opposes Harrison's motion, but it has not filed a response brief.  Therefore, the court is unable to conclude that Wells Fargo will be unduly prejudiced if the court allows Harrison to add this claim.

In reaching this conclusion, the court notes that "[a] court must 'more carefully scrutinize a party's attempt to raise new theories . . . by amendment when the opposing party has filed a motion for summary judgment.'"  *Wachovia Bank*, 2010 WL 2671316, at *2 (quoting *Parish v. Frazier*, 195 F.3d 761, 764 (5th Cir. 1999) (per curiam)).  Here, however, Wells Fargo has unsuccessfully moved for summary judgment based on the affirmative

defense of limitations, and it only raises Harrison's failure to plead a claim for violation of the automatic stay in response to Harrison's motion for summary judgment on his own claims. This is not a case, for example, where Harrison is seeking to avoid summary judgment based solely (or even primarily) on an unpleaded claim. Accordingly, Harrison's request for leave to amend does not present a circumstances in which "a party [is seeking] leave to amend as a means of staving off an opposing party's motion for summary judgment." *Id.* (citing *Valcho v. Dallas Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 815 (N.D. Tex. 2009) (Fitzwater, C.J.)).

4

The fourth factor considers the availability of a continuance to cure any prejudice. The trial of this case is currently set for a two-week docket in July 2015. The court can continue the trial, if necessary, to cure any prejudice caused by allowing the amended complaint.

5

The court now considers the four factors holistically. "It does not mechanically count the number of factors that favor each side." *Serv. Temps*, 2009 WL 3294863, at *3. Assessing the factors as a whole, the court holds that Harrison has met the good cause standard for modifying the scheduling order. Harrison has explained why he failed to move for leave to amend until after the deadline, the amendment he seeks is important, there is no basis to conclude that Wells Fargo will be unduly prejudiced, and the court can address any such prejudice through a trial continuance.

- 24 -

D

The court next evaluates under the Rule 15(a) standard whether leave to amend should be granted. *S & W Enters.*, 315 F.3d at 536. "The court should freely give leave when justice so requires." Rule 15(a)(2). The court can discern no compelling reason under this lenient standard to deny Harrison leave to amend. The court therefore grants Harrison's motion. He must file his amended complaint within 14 days of the date this memorandum opinion and order is filed.

\* \* \*

For the foregoing reasons, the court denies Harrison's motion for summary judgment, denies Wells Fargo's motion for summary judgment, denies as moot Wells Fargo's motion for leave to supplement summary judgment evidence, and grants Harrison's motion for leave to file an amended complaint.

**SO ORDERED**.

April 14, 2015.


SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

- 25 -